JAMES MOORE, PLAINTIFF-APPELLEE, v. PEOPLE'S PALACE, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Submitted January term, 1935—Decided April 13, 1935.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and BODINE.

For the plaintiff-appellee, *George T. Vickers.*

For the defendant-appellant, *David M. Klausner.*

PER CURIAM.

The case on appeal was tried in the Hudson County Court of Common Pleas, the jury finding for the plaintiff, and from the judgment accordingly entered the defendant corporation appeals. The following are the pertinent facts:

The defendant is the owner of a building known as People's Palace in Jersey City and had rented out three rooms to a lodge of which the plaintiff was a member and officer. On March 14th, 1931, an accident, in which the plaintiff was injured, occurred. The accident in question happened in one of the rented rooms, which might be called a locker room, adjoining the lodge room. In this room were several lockers containing the paraphernalia of the lodge. From one of the exhibits in the case, it appears that two of the lockers, to wit, those numbered four and five, were affixed to the wall at a height of perhaps nine feet above the floor. The defendant had provided a ladder for the use of the tenant to gain access to these lockers. Just before the evening meeting of the lodge, the plaintiff had ascended the ladder and was in the act of taking out some lodge property from these lockers when the ladder gave way or slipped from under him, as the complaint charges, and the plaintiff fell to the floor and suffered a broken knee-cap.

The defendant is charged with negligence in that it maintained the said room in an unsafe condition by permitting the floors thereof to be in an "oily and slippery condition" and by "providing the ladder aforesaid which was unsafe and out of repair" and unsatisfactory for the purpose for which the defendant placed in there, namely, to reach the said lockers.

The appellant urges that the court below fell into error in the trial of the cause in (a) rejecting defendant's motion for nonsuit; (b) in refusing to direct verdict for defendant, and (c) in the admission of testimony.

In the plaintiff's case it was developed that when the plaintiff was on the ladder, engaged in bringing some property out of the lockers, for use at the lodge meeting that night, the ladder slid across the floor causing him to fall and suffer the

injury mentioned. It appears that the ladder originally was of the "spreader" type, that is, one having a hinge midway between the top and bottom connecting the front and rear upright sections. This ladder, however, while it had been one of the spreader type, had no spreaders on it at the time of the accident but instead, the rear upright, as we understand the testimony, was bound to the front section with wire. Affixed to the top of the ladder, apparently as some sort of a substitute for the security of the "spreader" was a "cleat" or angle iron, one part of which was screwed into the platform top of the ladder and the other part of which was calculated to rest, and in this case did rest, upon the wooden projection which formed the floor of the lockers in question which were, as has been said, a matter of nine feet above the floor of the room.

It further appeared in the testimony of the plaintiff that after his fall it was discovered that the part of the iron cleat which had been screwed into the platform top of the step ladder had been torn loose therefrom, the cleat itself remaining on the floor of the locker.

The negligence charged in the complaint relates to the slippery condition of the floor and the providing of a ladder which was "out of repair" and "unsafe" for the uses for which it was intended. The closest scrutiny of the testimony in this case convinces us that these charges of negligence were not proved nor was there any proof from which the negligence of the defendant might be inferred.

First, as to the ladder: Assuming as we must that the ladder was as stated by the plaintiff's witnesses, none the less, in our judgment, it falls short of establishing negligence on the part of the defendant. True, the ladder had been converted from what, in the testimony, is called the spreader type to the ordinary type and that it had affixed to its top step or platform a cleat or angle iron, one part of which was screwed into the top step or platform of the ladder and another part of which rested on the floor of the locker. There is no proof that this appliance was out of repair or that it was an unusual fixture such as to render the ladder unsafe. In the absence of proof that it was so, we cannot assume that

it was so unusual an appliance as to render the ladder unsuitable for the use for which it was intended. It may be that the weight of the plaintiff, in ascending the ladder, tore the cleat loose from its fastenings. This alone would not prove negligence. There is no proof before us that the fixture in question was loose or out of repair or if it was that the defendant had notice thereof or was chargeable with notice. The doctrine of *res ipsa loquitur* is not helpful to the plaintiff. It has no application to the facts before us. The doctrine of *res ipsa loquitur* is applicable when the mere happening itself bespeaks negligence. The facts before us do not bespeak negligence but merely the happening of an accident. The proofs before us on this particular do not contain facts that spell negligence or testimony from which negligence might be inferred.

This brings us to the second point upon which the plaintiff relies to convict the defendant of negligence, viz., negligent maintenance of the floor. Defendant's counsel, in examining the witness, McArthur, on cross-examination, brought out testimony as to the condition of the floor as follows: "*Q*. When you say oiled—what kind of oil was on the floor? *A*. Floor oil. *Q*. Greasy floor oil? *A*. Yes. * * * *Q*. And was the floor polished with this oil? *A*. I wouldn't call it polished, just an oil that was used to bring out the grain of the wood, I suppose. *Q*. Heavier than should ordinarily be put on? *A*. I should imagine."

Even this testimony doesn't permit the conclusion that the oiling of the floor was improperly done or that the oil used for bringing out the grain of the wood, as the witness says, was anything out of the ordinary kind of oil which is used for treating floors. *Abt* v. *Leeds, Lippincott Co.,* 109 *N. J. L.* 311; 162 *Atl. Rep.* 525. The mere happening of an accident doesn't give rise to the inference of negligence. We are of the opinion that negligence on the defendant's part was not proved and that the defendant's motion for a nonsuit should have been granted.

The judgment is reversed and a *venire de novo* awarded, costs to abide the event.