248 P.2d 668

McMURDO et al. v. SOUTHERN UNION GAS CO.

No. 5507.

Supreme Court of New Mexico.

Sept. 26, 1952.

Quincy D. Adams, Albuquerque, for appellants.

Hugh R. Horne, Albuquerque, for appellee.

## COMPTON, Justice.

Appellant, Jim McMurdo, representative of the estates of J. B. Callahan and Lillie May Callahan, deceased, instituted this action against appellee, Southern Union Gas Company, for their wrongful deaths.

Appellee was engaged in furnishing natural gas, for heating purposes, to residents of the City of Albuquerque and vicinity, among whom was J. B. Callahan, the deceased. On the morning of January 9, 1950, circumstances about the Callahan residence were so unusual that officials of the city were called to investigate. Upon arriving, the bodies of J. B. Callahan and Lillie May Callahan, his mother, were found in a small bedroom used by him, in which an unvented open type gas heater was burning. All doors and windows to this room were closed and the odor of raw

gas and carbon monoxide fumes were present. There was food upon a table near the bed on which the bodies were found. Further investigation disclosed unopened Christmas packages. Some were found in his house and others between the screen and front door, indicating death had resulted prior to the holidays. Neither had been seen subsequent to December 23, previously. Near the J. B. Callahan residence was another one room house in which Lillie May Callahan lived and did the cooking for herself and son and in which a gas stove, used for cooking, was also burning at the time the officers arrived.

The complaint charges that appellee negligently furnished gas to the residence of J. B. Callahan in such manner as to permit it to escape from its pipes, or the pipes and appliances of J. B. Callahan so as to generate poisonous fumes or gases, after having been previously notified by J. B. Callahan that such gases and fumes were escaping into his residence.

The answer contained legal questions, admissions, and denials. The material allegations were put in issue by a general denial. Contributory negligence and assumption of risk were pleaded as affirmative defenses. Also, as an affirmative defense in avoidance of liability, appellee pleaded that the death of Lillie May Callahan was proximately caused by a malfunctioning open type gas heater, improperly installed by persons other than appellee, negligently maintained by J. B. Callahan and operated in a negligent manner. From a verdict in favor of the Gas Company, appellant appeals. The submission of the affirmative defenses to the jury, the giving of certain instructions, and the refusal to give certain requested instructions, are assigned as error.

It is insisted that the affirmative defenses, contributory negligence and assumption of risk, in so far as Lillie May Callahan was concerned, were not supported by substantial evidence. In this regard it is shown that she was of age of 57 years, in good health, and performed the usual duties of a housewife. She was possessed of all her faculties, physically and mentally. As previously seen, she did the cooking for herself and son on a gas burning stove. Presumably, on the day of the accident she prepared his evening meal, which was later found on the table beside his bed. Thus, she had ample opportunity to become acquainted with the dangerous instrumentality, which possibly caused her death. This being so, whether her knowledge of the danger attending such an instrumentality, constituted a sufficient warning of peril and whether the care thereafter exercised by her was commensurate with the known danger, were questions for the jury. The text writer at 38 Am.Jur. (Negligence) Sec. 188, says:

"* * * The circumstances of a case, including the physical characteristics of the offending instrumentality may be such that an appreciation of the peril may be inferred from the plaintiff's knowledge of the instrumentality. Accordingly a question of contributory negligence does not become one of law for the Court to decide solely for the reason that there is no evidence directly to the effect that the plaintiff appreciated the peril. In other words, it is for the jury to determine whether knowledge of the physical characteristics of the offending instrumentality constituted a sufficient warning of peril to the plaintiff. * * *"

It would appear, therefore, that the court properly submitted the issues of contributory negligence and assumption of risk to the jury.

 It is claimed that appellee's pleading, in avoidance, constituted an admission that death resulted from asphyxiation and that such admission dispensed with proof as to cause of death. The trial court, however, took a different view and instructed the jury that it was incumbent upon appellant to establish the cause of death as alleged. The giving of this instruction is charged as error. This contention is disposed of by Rule 8(c) our Rules of Civil Procedure, which provides that a party pleading to a preceding pleading, shall set forth affirmatively inter alia assumption of risk, contributory negligence and any other matter *constituting an avoidance*. Subsection (e) of the rule further provides that a party may set forth two or more statements constituting a defense or he may state separate defenses regardless of consistency. It follows, therefore, that admissions so unavoidably contained in one defense cannot be used against a defendant in another. To hold otherwise, would greatly impair, if not totally destroy, the right to plead inconsistent defenses as provided by the rule. We are of the opinion that the trial court quite properly charged the jury.

 We are not unmindful of certain statements made by appellee's assistant superintendent to the effect, "these people were asphyxiated." It is claimed that the company is bound by such admission. The rule is well established that an agent cannot bind his principal by admissions unless such admissions are made by the agent while acting within the scope of his authority, Raftery v. Kansas City Gas Co., 237 Mo.App. 427, 169 S.W.2d 105, and such authority is not shown. Also see American Law Institute, Restatement, Admissions of agent, Secs. 286 and 288.

 The evidence discloses that the type of heater used in the J. B. Callahan residence was in common use in the City of

Albuquerque and vicinity, and could be purchased at various places within the city. Concededly, it was neither installed nor maintained by appellee. Nevertheless, it is argued that since appellee knew such types of heaters to be dangerous and in common use, it was under a duty to warn the public in some manner or to take steps to avoid dangers necessarily resulting therefrom. Appellant says that it was the duty of the company to refuse or discontinue service upon learning that such type of heater was in common use. The refusal of the court to so instruct the jury is assigned as error. We are not impressed by the argument as the authorities generally hold that a gas company which does not install, own, nor control pipes and appliances in a customer's building is not responsible for the condition in which they are maintained. Scarborough v. Central Arizona Light & Power Co., 58 Ariz. 51, 117 P.2d 487, 138 A.L.R. 866, and annotation following. Moreover, the evidence is clear that the type of heater used by J. B. Callahan becomes a dangerous agency only when not properly maintained. As previously seen, negligence was predicated upon a breach of duty, the supplying of gas to the residence of J. B. Callahan, with knowledge of defective pipes or appliances. On that issue the court properly charged the jury that if the company had knowledge that the appliances used by J. B. Callahan were defective and thereafter supplied his residence with gas, which was the proximate cause of the injuries, its verdict should be for appellant. The jury obviously resolved the question in favor of appellee.

A case on principle and somewhat similar factually, is Cadogan v. Boston Consolidated Gas Co., 290 Mass. 496, 195 N.E. 772, 774. The contention was made that the defendant sold to the plaintiff an inherently dangerous article without warning plaintiff of its dangerous character. Recovery was denied, the court saying:

"We think that at this late day the defendant could reasonably assume that a householder in Boston was sufficiently familiar with the kind of illuminating gas used in this part of the country to know that it was dangerous to health, that it must not be allowed to escape and that it must be consumed in such manner as to avoid the accumulation in the house of toxic gases. It is common experience that householders are capable of using safely the gas which is supplied them through their service pipes. Where the company supplying the gas has undertaken no responsibility with respect to the appliances within the house or the method of using the gas in them * * * we think that, in the absence of peculiar circumstances, there is no duty on its part to warn the consumer with whom it deals, *and so no duty to warn*

*third persons*, of the dangers attendant upon the burning of gas. * * *" Emphasis ours.

Finding no error the judgment will be affirmed, and it is so ordered.

LUJAN, C. J., and SADLER and Mc-GHEE, JJ., concur.

COORS, J., not participating.